**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | 2:05-CR-0121-RCJ-RJJ |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| ROBERT DAVID KAHRE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the Court on Defendant Robert Kahre's Motion for Suppression of Illegally Seized Evidence and 'Fruits of the Poisonous Tree," and Return of Illegally Seized Evidence. (#737.)   Several other Defendants filed Motions for Joinder as follows: (1) Steven Rosenabum (#746); (2) Lori Kahre (#763); (3) John Kahre (#907); (4) Ron Ruggles (#1015); (5) Debra Rosenbaum (#1112); and (6) Myra Buonomo (#1321).   The Court has considered the Motions, the pleadings on file, and oral argument on behalf of the parties and hereby issues the following Order.

**BACKGROUND**

On May 29, 2003, Internal Revenue Service ("IRS") and Federal Bureau of Investigation ("FBI") (collectively the "Government") agents executed search warrants at four principal locations: (1) 6270 Kimberly Avenue, Suites C & D, Las Vegas; (2) 6295 N. Grand Canyon Drive, Las Vegas; (3) 1555 Bledsoe Lane, Las Vegas; and (4) 701 North Valley Verde, Henderson, Nevada.   Defendants claim the Government carried out these raids pursuant to a policy promulgated by high ranking DOJ and IRS policy makers.   Plaintiffs allege this policy

was designed to retaliate against organizations that criticize the government's fiscal and taxing activities and organizations that advocate the use of gold and silver coins as a medium of exchange, abolition of the income tax, and the radical reduction of IRS powers.

On May 29, 2003, the Government agents conducted three separate raids from which Defendants base their constitutional claims. As noted above, the first of these incidents took place at 6270 Kimberly Avenue, Suites C and D. The Kimberly location is a commercial building comprised of offices, a warehouse, and a metal shop enclosed under a common roof. The structure is enclosed by a chain link fence with a gate that remains unlocked during work hours. Defendants contend that at approximately 1:00 p.m., the Government, with use of an armored personnel carrier, crashed through the closed but unlocked gate. According to Defendants, the Government made no attempt to obtain Plaintiffs' permission to enter the gate. Plaintiffs allege that after breaking through the gate, Defendants destroyed surveillance cameras located nearby.

Defendants claim that upon entering the Kimberly property, the Government armed themselves with submachine guns, entered the building, and aimed their weapons at the occupants. Defendants also allege the Government handcuffed them, escorted them outside, and searched them.

According to Defendants, the Government questioned several individuals without first advising them of their *Miranda* rights. Defendants further contend the Government unnecessarily destroyed Defendants' property, including office cabinets, lockboxes, and the surveillance system. Defendants also state the Government refused to present the search warrants upon request, but instead left behind two search warrants that did not identify the crimes being investigated or contain a description of the property to be searched.

The second search took place at 6295 North Grand Canyon Drive. This location is comprised of two separate and distinct dwelling units. The primary structure is a one-story building containing several administrative offices for Defendant Robert Kahre and his businesses. The secondary structure serves as the primary residence for Defendant Lori Kahre. A five foot cinder block wall surrounds the secondary structure separating it from the primary structure.

The third search took place at 1555 Bledsoe Lane where a single story house is located on a large lot surrounded by a wrought iron fence where Kahre stores and repairs heavy equipment. Finally, Defendants allege that at approximately 1:30 p.m., the Government arrested Defendant Robert Kahre at Bank of the West. Kahre had gone there to cash two checks for a total of $230,913.00. Although Defendant Kahre claims to be engaged in a boycott of the Federal Reserve system, Defendant Kahre had in his possession a shoulder bag containing $230,913.00 in Federal Reserve notes along with various other items.

## DISCUSSION

The Fourth Amendment states in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. In arguing that the Government violated their constitutional rights, Defendants base their Motion to Suppress on four main grounds: (1) the Government lacked probable cause; (2) the search warrants were overly broad and "tantamount to general warrants"; (3) the Government conducted the search in an unreasonable manner; and (4) the Government could not have relied upon the warrants in good faith. (#737 at 2.)

**I.      Standing**

As a preliminary matter, the Court must determine whether Defendants have standing to

challenge the search warrant's validity or the Government's methods in executing the search warrant. To establish standing to challenge the legality of a search or seizure, Defendants must demonstrate they have a "legitimate expectation of privacy" in the items seized or the area searched. *United States v. Padilla*, 508 U.S. 77, 82 (1993). To demonstrate this expectancy, Defendants must manifest a subjective expectation of privacy in the area searched, and their expectation must be one that society would recognize as objectively reasonable. *See United States v. Echegoyen*, 799 F.2d 1271, 1277 (9th Cir. 1986) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). Defendants have the burden of establishing that, under the totality of the circumstances, the search or seizure violated their legitimate expectation of privacy. *See Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *United States v. Kovac*, 795 F.2d 1509, 1510 (9th Cir. 1986).

The Court finds that Defendant Robert Kahre has standing to challenge the validity of the search warrants with respect to the properties at issue. Defendant Kahre either owned the properties at issue, leased the properties, or otherwise conducted his business at the four locations searched. However, a person who is not present at the search cannot challenge the officers' failure to knock and announce or present the warrant. *United States v. Silva*, 247 F.3d 1051, 1059 (9th Cir. 2001). Moreover, Fourth Amendment rights cannot be asserted vicariously. *Id.* Defendant Kahre was arrested at the Bank of the West and was not available to monitor any of the search locations while the search warrant was being executed. Thus, while Defendant Robert Kahre has standing as to the premises searched, he lacks standing as to the manner in which the Government executed the search warrant. *Id.*

With regards to Defendant Lori Kahre, the parties only object as to whether she has standing as to her office. The Court finds that Defendant Lori Kahre has standing as to her office because she has a reasonable expectation of privacy with respect to her workplace. Further, she

also has standing to her private premises. The Court finds that the remaining Defendants who joined in Defendant Robert Kahre's Motion to Suppress lack standing. These Defendants neither presented evidence nor argued they had a reasonable expectation of privacy as to the searched premises. Indeed, the remaining parties failed to object to the Government's argument regarding their lack of standing. Accordingly, the Court finds they lack standing and denies their Motions for Joinder.

**II.    Probable Cause**

Probable cause "'means less than evidence which would justify condemnation, and . . . may rest upon evidence which is not legally competent in a criminal trial.'" *United States v. Bridges*, 344 F.3d 1010, 1014-15 (9th Cir. 2003) (quoting *United States v. Ventresca*, 380 U.S. 102, 107 (1965)). Further, "'[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* at 1014 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The duty of this Court in reviewing the magistrate's decision to issue a warrant "is simply that the magistrate had a substantial basis for . . . concluding that probable cause existed." *Id.* (citation omitted).

**A.    Probable Cause to Issue the Warrant**

In the case at bar, the Government's application for a search warrant was supported by the affidavit (the "Affidavit") of IRS Special Agent Jared Halper. The Affidavit, which is forty-five pages long, sets forth in detail the Government's bases for requesting a warrant. The Affidavit also outlines the allegations against Defendants and specifically describes the alleged payroll scheme used by Defendants to avoid income tax liability. The Affidavit further describes the alleged conspiracies and other crimes with which Defendants are charged. Agent Halper's Affidavit is more than sufficient to demonstrate probable cause. The Supreme Court has noted

that "an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, so long as the magistrate is informed of some of the underlying circumstances supporting the affiant's conclusions . . . ." *Ventresca*, 380 U.S. at 108 (internal quotation marks and citations omitted). Here, not only did the affiant (Agent Halper) describe his personal observations, he also discussed the investigations conducted by other Government officials and agents. The Affidavit lists specific investigations conducted and the information obtained from such investigations. The Affidavit further connects these investigations to the property being sought in the Affidavit. For the reasons stated above and at oral argument, there can be little doubt that the Government set forth sufficient facts to demonstrate probable cause.

### B. Probable Cause to Employ "Special Entry Procedures"

Defendants also claim the Government lacked probable cause to utilize special entry procedures at the properties searched. The Affidavit indicates that the Government planned to execute simultaneous searches on the properties listed in the warrant. The Affidavit sets forth specific facts indicating the need for special procedures. For example, Defendant Robert Kahre had previously sent letters to the IRS indicating that he did not recognize IRS agents as having any legitimate law enforcement authority or the right to carry weapons. The Government also had information regarding a probable presence of armed guards on the premises to be searched. In addition, bank personnel confirmed the presence of security guards with Defendant Kahre when he visited the bank. These facts are sufficient to establish that the magistrate "had a substantial basis for . . . concluding that probable cause existed" as to the need for special entry procedures. *Bridges*, 344 F.3d at 1014 (citation omitted). Thus, the Government had probable cause to employ special procedures, including the anticipated use of reasonable force. However, as analyzed below, the Court does not opine on whether the Government used unreasonable force in carrying out the search warrants with regards to specific items of property.

1   **III.    General Warrants**

2          Pursuant to the Fourth Amendment, a search warrant must "particularly describe[] the

3   place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "This

4   particularity requirement makes 'general searches under (a warrant) impossible and prevents the

5   seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left

6   to the discretion of the officer executing the warrant.'" *Id.* at 1015-16 (internal quotation marks

7   and citations omitted). A search warrant must be "reasonably specific in describing what is to

8   be seized from a person's home or office." *Id.* at 1016. Hence, "'to determine whether a warrant

9   lacks sufficient specificity, [the Court] must examine both the warrant's particularity and its

10  breadth.'" *Id.* (quoting *United States v. Kow*, 58 F.3d 423, 426 (9th Cir. 1995)). Nevertheless,

11  "while a search warrant must describe items to be seized with particularity sufficient to prevent

12  a general, exploratory rummaging in a person's belongings, it need only be reasonably specific,

13  rather than elaborately detailed, and the specificity required varies depending on the

14  circumstances of the case and the type of items involved." *Id.* (internal quotations and citations

15  omitted). An otherwise insufficient warrant may satisfy the particularity requirements by

16  reference to an affidavit if (1) the affidavit accompanies the warrant; and (2) the warrant uses

17  suitable words of reference which incorporate the affidavit. *Ramirez v. Butte-Silver Bow County*,

18  298 F.3d 1022, 1026 (9th Cir. 2002).

19         Although broad in scope, a wide-ranging seizure of documents may be justified if the

20  Government establishes probable cause to believe that all of the business records are likely to

21  be evidence of criminal activity. *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995). Rule

22  41(d) of the Federal Rules of Criminal Procedure requires officers to present a particularized

23  warrant to the owner of the premises of a search if the owner is present at the search. Fed. R.

24  Crim. P. 41(d). However, officers may execute a search warrant if the owner of the premises to

25                                              Page 7 of  14

1    be searched is not present. *See, e.g., United States v. Chubbuck*, 32 F.3d 1458, 1461 (10th Cir.

2    1994).

3        Defendants contend that the search warrant in this case was overly broad and was

4    tantamount to a general warrant because it authorized the seizure of all records including but not

5    limited to forty-five named businesses associated with Defendant Robert Kahre.  Defendants

6    further assert the Government violated their Fourth Amendment rights because the search

7    warrant did not incorporate the affidavit in order to establish probable cause.  According to

8    Defendants, the Government did not present the affidavits accompanying the search warrants at

9    the various locations searched.  Defendant Robert Kahre further contends the Government failed

10   to present him with a particularized warrant upon his arrest.  Defendants argue that although the

11   Government read the warrant and attachments prior to the search, they did not present the

12   affidavits to the owners or occupants of the search locations during the search.

13       The affidavits accompanying the search warrants declare that Robert Kahre operates at

14   least eighteen different business names at several locations.  In this case, the search warrant was

15   delimited by time.  Specifically, the search warrant limited the items seized to such business or

16   financial documents pertaining to the periods between January 1, 1992, to December 31, 1993,

17   and from January 1, 1997 through the present.  In addition, the warrant is delimited by the

18   examples of pertinent records and the reasons for which the records were being seized.  As noted

19   above, although broad in scope, a wide-ranging seizure of documents may be justified if the

20   government establishes probable cause to believe that all of the business records are likely to be

21   evidence of criminal activity.  *Kow*, 58 F.3d at 427.  The search warrant and the accompanying

22   affidavit specifically listed the offenses charged and the types of "records" the Government

23   deemed relevant.  The scope of Defendants' alleged violations justifies the extent of the records

24   sought through the warrant.  The search warrant sufficiently limits the discretion of the officer

25                                    Page 8 of  14

within an admittedly broad range of documents as well as a pertinent time frame, and therefore is not overly broad or tantamount to a general warrant.

While the search warrant at issue alone does not satisfy the particularity requirement, the search warrant references Attachments A and B, as well as the relevant affidavit. Attachment A indicates the properties to be searched, and Attachment B contains a list of items to be seized. While the Defendants argue the Government failed to present the affidavit at each search site, the Court finds that the affidavit was available at each property the Government searched. The evidence presented at oral argument establishes that Government did in fact attach the affidavit to the warrant. The xerox copies of the attachments reveal identical staple marks to the accompanying warrant. In addition, Defendants failed to present sufficient evidence at oral argument to establish that the Government failed to attach the affidavit to the warrant. Accordingly, the warrant, accompanied by attachments, satisfies the particularity requirement. *See Ramirez*, 298 F.3d at 1026.

In addition, Defendants have failed to demonstrate a Fourth Amendment violation with respect to the Government's alleged failure to present the affidavits and attachments to Defendant Kahre during the search. Kahre was the owner of the premises, but he was arrested at Bank of the West prior to the Kimberly Avenue search. Because Defendant Kahre was not at the search sites, the Government could not and did not have to provide Kahre with the particularized warrant. Therefore, the Government's failure to provide the particularized warrant to Kahre does not violate his Fourth Amendment rights. *See, e.g., Chubbuck*, 32 F.3d at 1461.

**IV.    Scope of the Search Warrants and Unreasonable Force**

First, Defendants argue the Government exceeded the search warrant by searching the garage located at the Bledsoe Lane property. According to Defendants, the garage was not included in the search warrant. The affidavit attached to the warrant authorized the Government

1  to search the residence located at 1555 Beldsoe Lane, Las Vegas, Nevada 89110.  The affidavit

2  further described the property as a light colored, stucco single story house, located on a large lot

3  measuring 100 feet by 13 feet deep.  The affidavit further indicates that "in the rear of the lot is

4  a 2400 square foot detached garage."  The Court finds that this description includes the detached

5  garage.  However, even if the garage is not included in the warrant, David Hamilton, the resident

6  at the property with control and authorized entry and use thereof, consented to the Government's

7  search of the garage.  Mr. Hamilton signed a voluntary consent form allowing the Government

8  to search the garage.  The consent form acknowledges that Mr. Hamilton signed the form under

9  no fear of intimidation.  Defendants assert that Mr. Hamilton signed the waiver under duress.

10  However, the Court finds no duress at the time he signed the statement.   According to

11  Defendants, Mr. Hamilton was under duress because the Government had arrested him at

12  gunpoint.  However, by the time he signed the waiver, the armed agents from a local police swat

13  entry team had long since departed.  Further, no one threatened Mr. Hamilton during the signing

14  of the consent form.  A videotaped statement confirms Mr. Hamilton was not under duress.  He

15  was informed of his rights to answer or refuse to answer questions.  Accordingly, for the reasons

16  stated above and at oral argument, the Court finds that the garage in question was included in the

17  warrant.  Moreover, even if the warrant did not authorize the Government to search the garage,

18  Mr. Hamilton consented to the search.  *See United States v. Fuentes*, 105 F.3d 487, 488 (9th Cir.

19  1997).

20          Second, Defendants argue the Government illegally confiscated some items not

21  specifically listed in the warrants, such as some gold coins and cash.  "It has long been settled

22  that objects falling in the plain view of an officer who has a right to be in the position to have

23  that view are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390

24  U.S. 234, 236 (1968).  To fall within the plain view exception, the officers must have lawful

25                                          Page 10 of  14

1    authorization to search the area where the evidence is found and the evidence's incriminatory

2    nature must be immediately apparent.  *Roe v. Sherry*, 91 F.3d 1270, 1272 (9th Cir. 1996).

3    Further, where a warrant permits an agent to search for certain types of documents or records,

4    the plain view doctrine allows the agent to briefly peruse each document or paper he finds to

5    determine whether they fall within the scope of the warrant.  *United States v. Issacs*, 708 F.2d

6    1365, 1370 (9th Cir. 1983).  The cash and gold coins were seized pursuant to the plain view

7    doctrine because (1) the agents were authorized to search the areas where the evidence was found

8    and (2) the incriminatory nature was clearly evident.  The Government alleges that Defendants

9    failed to pay taxes for several years.  The Government further alleges that Defendant Kahre

10   executed a payroll scheme using gold coins whereby he allegedly defrauded the Government out

11   of payroll taxes.  Thus, the evidence seized was relevant to the alleged crimes.

12           Third, Defendants argue the Government acted unreasonably and used excessive force

13   in executing the warrant.  Specifically, Defendants contend that the Government's manner of

14   entry, search methods, and conduct toward individuals at the various locations constituted

15   excessive force and therefore rendered the search illegal.  Courts have held that "the manner in

16   which a warrant is executed is subject to later judicial review as to its reasonableness."  *Dalia*

17   *v. United States*, 441 U.S. 238, 258 (1979).  Unnecessary destruction of property or use of

18   excessive force can render a search unreasonable.  *Boyd v. Benton County*, 374 F.3d 773, 780

19   (9th Cir. 2004); *Liston v. County of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997).  Deciding

20   whether the Government's actions were reasonable requires a court to balance "the nature and

21   quality of the intrusion on the individual's Fourth Amendment interests against the

22   countervailing governmental interests at stake."  *Graham v. Connor*, 490 U.S. 386, 396 (1989)

23   (internal quotation marks omitted).

24           As mentioned above, whether the entries and searches were conducted reasonably in this

25                                           Page 11 of  14

case is currently the subject of a separately pending civil action.  While this Court does not ultimately issue an opinion regarding whether the Government used excessive force, in order not to bind the Court handling the civil dispute, the Court does find that the Government had probable cause to use special entry procedures.  Defendant Kahre believed the IRS had no authority to carry out law enforcement activities and had made his beliefs known to the Government.  Further, the Government had received information that Defendant Kahre regularly used armed security guards.  Further, in his correspondence with the IRS, he had implied altercation and violent response if the IRS attempted to enter.  Therefore, the Government had legitimate concerns about their safety in entering and searching the house because, according to Kahre, Kahre would have considered the IRS agents as trespassers, illegally entering and confiscating his property as well as detaining his workers.

Ultimately, while the Court may consider some of the methods used as unreasonable or questionable, it need not determine whether the search used excessive force is some instances because suppression is not appropriate in any event.  The alleged Fourth Amendment violation and the discovery of the evidence lack the causal nexus that is required to invoke the exclusionary rule.  The exclusionary rule applies only when discovery of evidence results from a Fourth Amendment violation that is well-established.  *See Segura v. United States*, 468 U.S. 796, 804 (1984) (noting that the exclusionary rule reaches "evidence obtained as a direct result of an illegal search or seizure," or "found to be derivative of an illegality"); *see also United States v. Pulliam*, 405 F.3d 782, 791 (9th Cir. 2005) (denying suppression because "the indispensable causal connection" between the unlawful act and discovery of the evidence was absent).

In *United States v. Ramirez*, 523 U.S. 65 (1998), the Supreme Court noted that

Page 12 of  14

1   "[e]xcessive or unnecessary destruction of property in the course of a search may violate the

2   Fourth Amendment, even though the entry itself is lawful and *the fruits of the search are not*

3   *subject to suppression*." *Id.* at 71 (emphasis added).  Although the Court concluded that the

4   police conduct in that case did not violate the Fourth Amendment, the Court noted that, even if

5   the search had been unreasonable, it then would have had to determine "whether . . . there was

6   [a] sufficient *causal relationship* between the breaking of the window and the discovery of the

7   guns to warrant suppression of the evidence."  *Id.* at 72 n.3 (emphasis added).

8          Here, the discovery of the records and other seized evidence was not causally related to

9   the manner of executing the search.  The police had a warrant, which the Court finds valid. Even

10  without the use of handcuffs, guns, and other methods employed by the Government, "the police

11  would have executed the warrant they had obtained, and would have discovered the [evidence]

12  inside the [searched locations]." *Hudson v. Michigan*, 126 S. Ct. 2159, 2164 (2006); *cf. United*

13  *States v. Hector*, 474 F.3d 1150, 1155 (9th Cir. 2007) (holding that suppression was

14  inappropriate where "[t]he causal connection between the failure to serve [a] warrant and the

15  evidence seized is highly attenuated, indeed non-existent").  Accordingly, the Court denies

16  Defendants' Motion to Suppress based on the above arguments.[1]

17  **V.    Good Faith**

18         Even if the search warrant was invalid, the Court finds that the Government agents'

19  reliance on the warrant was not "so lacking in indicia of probable cause as to render official

20  belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984).

21

22         [1] Separate from the question of exclusion, courts have consistently stated that "42 U.S.C.
    § 1983 and the *Bivens* doctrine have made tort damages an effective remedy for constitutional
23  violations by federal or state law enforcement officers." *See, e.g., United States v. Langford*, 314
    F.3d 892, 895 (7th Cir. 2002).  Indeed, Defendants have filed a separate *Bivens* action with
24  regard to the Government's search.

25                                          Page 13 of 14

1   Defendants argue that the warrant was facially invalid and thus the agents could not have acted

2   with a good faith reliance on the warrants.  However, as the Court discussed above, probable

3   cause existed to conduct the searches and to employ alternative entry methods.  Thus, the Court

4   finds the Government acted in good faith in executing the search warrant in this case.

5                                    **CONCLUSION**

6          Pursuant to the above analysis, IT IS HEREBY ORDERED that Defendants' Motion

7   to Suppress (#737) is *denied*.  IT IS FURTHER ORDERED that Defendant Lori Kahre's

8   Motion for Joinder (#763) is *granted*, and the following Motions for Joinder are *denied*: (1)

9   Defendant Steven Rosenbaum (#746); (2) John Kahre (#907); (3) Ron Ruggles (#1015); (4)

10  Debra Rosenbaum (#1112); and (5) Myra Buonomo (#1321).

11         DATED:        July 13, 2007

12

13         _____

14                              ROBERT C. JONES
                           UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25                              Page 14 of  14